[ .BROWN, C.J.
Appellant, Jerry Carr, has appealed from the trial court’s judgment dismissing with prejudice his action to annul a money judgment rendered in favor of plaintiffs, D.L. and Helen B. Williams, against the unopened successions of Carr’s grandparents, Mariah and Carey Nichols. For the reasons set forth below, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Facts

According to the pleadings in this matter, Carey Nichols died in 1975, then Mari-ah Nichols passed away in 1988. Then-only heir, a son, Billy Hodge, who died in 1991, was a resident of Arkansas. It was after Hodge’s death that the Williams took physical possession of Carey and Mariah Nichols’ home. Hodge left one heir, a son, Jerry Carr, a resident of Las Vegas, Nevada. No proceedings have ever been filed to open the successions of Mariah and Carey Nichols.
As stated, in 1991 plaintiffs, D.L. and Helen B. Williams, took possession of Ma-riah and Carey Nichols’ property and in particular, a home located at 406 West Askew Street in Tallulah, Louisiana.[1] At this time there was no debt owed to the Williams by the Nichols or their son, Billy Hodge. It is alleged by Carr that since 1991 plaintiffs have rented and received income from this property. After ten years, plaintiffs filed a lawsuit against the unopened successions of Mariah and Carey Nichols to recover amounts they allegedly paid in connection with the Nichols’ home, specifically, a | ¡.mortgage payment that included a sum for property taxes and insur- *97 anee premiums. In their petition, plaintiffs identified, but did not name as a defendant, Jerry Carr as the sole surviving heir and alleged that Carr was a resident of Las Vegas, Nevada. The petition requested that the court appoint an attorney to represent the “estate of Mariah and Carey Nichols.”
The trial court signed an order on September 28, 2001, appointing attorney Vicki V. Baker to represent “The Unopened Successions of Mariah and Carey Nichols.” The order makes no mention of Carr. Nonetheless, on October 23, 2001, Ms. Baker filed an answer on behalf of the unopened successions and Jerry Carr in which she made a general denial of all allegations. The record also contains a copy of a notice allegedly published in the October 10, 2001, edition of the Madison Journal at the request of Ms. Baker which asks for information regarding the whereabouts of Jerry Carr (erroneously referred to in the notice as the son of Mariah Nichols). Ms. Baker filed the notice of publication and noted that she had been unsuccessful in locating Carr.
On November 20, 2001, Ms. Baker waived her appearance at trial, and evidence was taken on behalf of plaintiffs. On December 3, 2001, the trial court signed a money judgment in favor of plaintiffs and against the unopened successions in the amount of $13,972.40 together with legal interest.
In 2003, the Williams initiated executory proceedings to collect on the judgment by causing a writ of fieri facias to be issued for constructive seizure of immovable succession property. At this time, the record reflects |3that Carr was provided notice of the seizure by Ms. Baker, who contacted him at an address in North Las Vegas, Nevada, via certified mail sent on October 31, 2003. We again note that Ms. Baker alleged in the previous proceeding that she had no information at that time concerning Carr’s whereabouts. On November 18, 2003, Carr filed a petition to enjoin the sale of the seized immovable property. His request for an injunction was set for hearing on December 4, 2003, and after taking evidence the trial court denied the request to enjoin the sale.[2] On December 17, 2003, the property was sold to plaintiffs at a sheriffs sale.
On December 5, 2003, Carr filed a petition to annul the judgment rendered against the unopened successions pursuant to La. C.C.P. art. 2002 on the grounds of improper service of process. The Williams filed an answer to the petition. The nullity action was set for trial on the merits on June 24, 2004. On June 23, 2004, the day before the scheduled trial, plaintiffs filed a motion for summary judgment which, by order of the trial court, was set for hearing the following day. On June 24, 2004, the court heard arguments on the merits of the petition for nullity. During the hearing, Carr’s counsel was asked whether he wished to put on any evidence in support of the action in nullity other than what was already a part of the record. Carr, through his attorney, stated that the record contained sufficient evidence to support his claim. Thereafter, the trial court rendered an oral ruling dismissing the petition with prejudice. A final judgment to this effect was signed on July 6, 2004. No mention was made 14in the trial court’s oral ruling or in the final judgment that the petition was being dismissed pursuant to the motion for summary judgment filed by plaintiffs.

Discussion

Motion for Summary Judgment

Appellant, Jerry Carr, first asserts that the trial court erred in granting plaintiffs’ *98 motion for summary judgment dismissing his action to annul when the motion for summary judgment was neither timely filed nor served on Carr or his attorney. Carr’s second assignment of error is that the trial court erred in finding that there was no genuine issue of material fact regarding his action to annul the judgment because a question of fact existed as to whether Carr had received notice of the original action against the successions.
Carr’s “Petition to Annul Judgment” was fixed for trial on the merits on June 24, 2004. That is precisely when the trial court convened, afforded counsel the opportunity to present additional evidence, and rendered its judgment on the merits. Neither the trial court’s oral ruling nor its final judgment gives any indication that it considered the untimely motion for summary judgment. Accordingly, Carr’s first two assignments of error are without merit.

Nullity of Action against Unopened Successions without Joinder of Sole Heir

Jerry Carr alleges that the money judgment rendered in favor of plaintiffs is an absolute nullity under La. C.C.P. art. 2002(A)(2) because it was rendered without service on the proper party defendant. Specifically, 15Carr argues that a succession representative is the proper party defendant in a suit to enforce an obligation of deceased individuals and that the attorney appointed to represent Mariah and Carey Nichols in the original suit was not a “succession representative.” Carr also argues that he was an indispensable party to the action, but was neither named as a defendant nor served with process and thus the judgment should be annulled insofar as it affects him.
La. C.C.P. art. 2002(A)(2) provides that:
A final judgment shall be annulled if it is rendered against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
La. C.C.P. art. 734 provides:
Except as otherwise provided by law, including but not limited to Articles 2641 and 2674, the succession representative appointed by a court of this state is the proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed. (Emphasis added).
La. C.C.P. art. 5091 provides in part:
(A) The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is:
[[Image here]]
(c) Deceased and no succession representative has been appointed.
[[Image here]]
(B) All proceedings against such a defendant shall be conducted contradictorily against the attorney at law appointed by the court to represent him. For the limited purpose of any such action or proceeding, the appointed attorney at law shall be the proper | (¡representative of the succession of any such decedent to the same extent as if he were the regularly appointed and duly qualified administrator or executor in such decedent’s succession. (Emphasis added).
*99 (C) The improper designation of the attorney appointed by the court to represent such a defendant as curator ad hoc, tutor ad hoc, special tutor, or any other title, does not affect the validity of the proceeding.
Significantly, Mariah and Carey Nichols never incurred any debt to plaintiffs. After their deaths and the demise of their only child in 1991, plaintiffs took possession of the Nichols’ property. The record contains no evidence to show that plaintiffs instituted formal proceedings to allow them to take control of this property. They simply took possession. They allegedly rented the property and paid the monthly note, which included taxes and insurance. After ten years, they filed a lawsuit to recover the costs of paying the note on the property; however, they neither offered an accounting of the rentals allegedly received nor did they turn possession of the property over to Carr.
The decedents owed no debt to plaintiffs; thus, their action at best claimed an obligation of a succession which was not under administration. Therefore, La. C.C.P. art. 734 is not applicable as it provides for the appointment of a succession representative to enforce an obligation “of his succession, while the latter is under administration.” No one has ever opened those successions. As stated by this court in Norton v. Graham, 35,520 (La.App.2d Cir.01/23/02), 806 So.2d 933, La. C.C.P. art. 734 must be read in conjunction with La. C.C.P. art. 5091. In that light and under the circumstances of this case, these provisions are not in conflict. Article 5091(B) clearly provides that an attorney appointed to represent a 17deceased defendant for whom no succession representative has been appointed shall be the proper representative of the succession for the purposes of all proceedings against such a defendant. As noted above, the debt allegedly owed to the Williams was not incurred by the decedents.
Plaintiffs are not enforcing an obligation of the decedents but are usurpers of decedents’ property and after ten years are claiming reimbursement for maintaining the property. They allegedly collected rent but did not provide an accounting. Plaintiffs claimed in their petition that Jerry Carr was the sole heir and as such, under La. C.C. art. 935 had seizin; however, they did not name Carr as a defendant.
The procedure employed by the Williams in having an attorney appointed to represent the unopened succession was not proper. In State Through Department of Transportation and Development v. Estate of Davis, 572 So.2d 39 (La.1990), the court stated:
The suit by the Department against the Estate of Giles Davis was in effect a suit against the succession; therefore, the proper party defendant was not an attorney at law appointed by the court to represent the Estate, but a succession representative. La.Code Civ. P. art. 734; Holland v. Unopened Succession of Holland, 562 So.2d 1022 (La.App. 3d Cir.), writ denied, 566 So.2d 399 (La.1990). Thus, it was the Department’s duty to determine whether or not the succession of Giles Davis had been opened and whether there was in existence a succession representative and, if not, to initiate proceedings to open the succession and have the proper succession representative appointed and subsequently named as the defendant in the expropriation suit. Id. at page 43.
The facts and circumstances of State Through DOTD v. Davis, supra, like those in the instance case, involved the enforcement of a right occurring | safter the death of the owner. Although Davis pre-dated the 1992 amendment to La. C.C.P. art. 5091, there is no conflict with that article.
*100 As provided in State Through DOTD v. Davis, supra, plaintiffs could have easily ascertained that the succession of neither Carey nor Mariah Nichols had ever been opened and thus, no succession representative had been appointed. Plaintiffs then could have initiated proceedings to open the successions, and have the proper representatives appointed and named as the defendants in their suit for reimbursement of amounts allegedly paid by plaintiffs for the benefit of the Nichols’ property. This would have ensured that Jerry Carr, the sole legal heir of decedents, could receive proper notice and have the chance to assert his claims and defenses in a timely manner.

Conclusion

For the reasons set forth above, the judgment of the trial court denying Jerry Carr’s petition to have the December 3, 2001, money judgment in favor of D.L. and Helen B. Williams declared a nullity is REVERSED.
IT IS ORDERED, ADJUDGED and DECREED that defendant, Jerry Carr’s, Petition to Annul Judgment is granted and this matter is REMANDED for further proceedings consistent with this ruling. Costs of this appeal are to be paid by appellees, D.L. and Helen B. Williams.
REVERSED and REMANDED.
STEWART, J., concurs with written reasons.

. The record contains an allegation by the Williams that Helen B. Williams was "closely related” to Mariah Nichols, although the exact familial relationship between the two ladies is not specified.

. In this petition, Carr alleged that the Williams had collected rental fees from the property at issue herein as well as from farmland owned by decedents.